1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                       **CENTRAL DISTRICT OF CALIFORNIA**

10

11 DONNA TOMLINSON,                    )        NO. CV 11-7705 SS
                                        )
12              Plaintiff,              )
                                        )
13        v.                            )        **MEMORANDUM DECISION AND ORDER**
                                        )
14 MICHAEL J. ASTRUE,                   )
   Commissioner of the Social          )
15 Security Administration             )
                                        )
16              Defendant.              )
                                        )

17

18                               **I.**

19                           **INTRODUCTION**

20

21      Donna Tomlinson ("Plaintiff") brings this action seeking to reverse

22 the decision of the Commissioner of the Social Security Administration

23 (hereinafter the "Commissioner" or the "Agency") denying her application

24 for Disability Insurance Benefits.  The parties consented, pursuant to

25 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

26 Magistrate Judge.  For the reasons stated below, the decision of the

27 Commissioner is REVERSED and REMANDED for further proceedings.

28 \\

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on February 20, 2008, (Administrative Record "AR" 87), with a protective filing date of February 19, 2008. (AR 124). Plaintiff alleged a disability onset date of September 28, 2007. (AR 128). Plaintiff based her claim on fibromyositis, arthritis, Sjogren's syndrome, peripheral neuropathy, extreme fatigue, pain and weakness. (AR 128, 139). Plaintiff also alleged depression. (AR 23-24). The Agency denied Plaintiff's claim for benefits on June 3, 2008. (AR 40).

Plaintiff then requested a hearing, (AR 46), which was held before Administrative Law Judge ("ALJ") Dennis Bennett on January 19, 2010. (AR 15-25). Plaintiff appeared and was represented by counsel. (AR 13). No Medical Expert or Vocational Expert testified. (AR 14-25).

On January 28, 2010, the ALJ issued a decision denying benefits. (AR 28-39). Plaintiff sought review of the ALJ's decision before the Appeals Council, (AR 178-80), which denied her request on July 18, 2011. (AR 1). Plaintiff sought review by this Court on September 23, 2011. (Compl. at 1).

\\
\\
\\
\\
\\

1
2

### III.

### FACTUAL BACKGROUND

3

4     Plaintiff was born on May 14, 1953 and was fifty-six years old at
5 the time of the last hearing.  (AR 15).  She holds a Master's degree in
6 business management and human resources.  (Id.).  Plaintiff speaks,
7 reads and writes English.  (AR 127).

8

9 A.   **Plaintiff's Medical History**

10

11    On October 30, 2007, Dr. Dhia Al-Wardi, a neurologist, diagnosed
12 Plaintiff with weakness, tiredness, lack of energy, excessive sleepiness
13 related   to   depression   and   peripheral   neuropathy   related   to
14 hypothyroidism.  (AR 202-03).

15

16    On March 26, 2008, Plaintiff's treating rheumatologist, Dr. Richard
17 Hollcraft, diagnosed her with chronic fatigue/chronic fibromyalgia
18 syndrome ("CFS"), insomnia, massive obesity, and lumbar spondyosis.  (AR
19 221-22).  On April 17, 2008, he confirmed his diagnosis and noted that
20 spinal disc degeneration could explain her low back pain.  (AR 218-19).

21

22    On November 11, 2008 Plaintiff began receiving treatment from Dr.
23 Chong-hao Zhao, who is board-certified in pain medicine, psychiatry and
24 neurology.  (AR 289-90).  Dr. Zhao diagnosed Plaintiff with chronic
25 bilateral neck pain and chronic bilateral low back pain.  (AR 290).  He
26 noted that Plaintiff's left buttock and leg pain score decreased from
27 five out of ten to zero.  (AR 287-88).  On December 13, 2008, he
28 performed a "C3 medial branch, C4 medial branch, C5 medial branch, nerve

block on left side," which reduced Plaintiff's left neck pain score from 6.5 out of 10 to 0.  (AR 284-85).  On January 3, 2009, Dr. Zhao performed a "L3, L4, L5 medial branch nerve block" on Plaintiff's left side, which reduced her left low back pain score from six out of ten to two.  (AR 281-82).  He also prescribed tramadol for pain.  (AR 283).

On April 25, 2009, Dr. Zhao diagnosed new impairments of right neck and upper extremity pain, with paresthesia, due to cervical radiculopathy secondary to herniated disc.  (AR 279).  He noted that Plaintiff's back pain had improved, but her neck pain score had increased to eight out of ten.  (Id.).  Dr. Zhao recommended three cervical epidural steroidal injections, which Plaintiff underwent on May 18, June 1 and June 13, 2009.  (AR 270, 273, 276).  These injections reduced her pain score from seven, five and six, to zero, respectively. (Id.).  On June 27, 2009, because Plaintiff had neck and right upper back pain that scored eight out of ten, Dr. Zhao performed a "C3 medial branch, C4 medial branch, C5 medial branch, nerve block on right side," which reduced her pain to zero.  (AR 267-68).  On August 12, 2009, Dr. Zhao noted that Plaintiff had relapsed, with a pain score of six on the neck and seven on the low back, bilaterally, despite taking painkillers. (AR 265).  Plaintiff also attended physical therapy approximately once per week from November 2008 to August 2009.  (AR 268, 272, 283, 290).

On October 3, 2009, Dr. Zhao noted that Plaintiff could possibly work part-time if the work environment were customized to her physical condition.  (AR 262-64).  Dr. Zhao found that Plaintiff's sitting, standing and walking should each be limited to twenty minutes at a time, with a total of two hours and forty minutes in an eight-hour workday;

1  Plaintiff could lift zero to five pounds occasionally but never more
2  than five pounds; Plaintiff should never bend, squat or climb; Plaintiff
3  should reach only occasionally; Plaintiff's fine manipulation should be
4  limited to 40 minutes out of every 320 minutes because pushing and
5  pulling would aggravate her pain; Plaintiff cannot use her legs or feet
6  for repetitive movements like pushing and pulling because it would
7  aggravate her pain; Plaintiff's ability to turn her head or bend her
8  neck was moderately restricted; and Plaintiff would miss at least three
9  days of work per month due to her condition.  (Id.).

10

11      From May 6, 2009 to December 17, 2009, Plaintiff had weekly
12  psychotherapy treatments with Dr. Trudy E. Martin.  (AR 322).  Starting
13  in the last week of July 2009, Plaintiff's sessions were increased to
14  twice a week due to the severity of her psychological conditions.
15  (Id.).  Dr. Martin diagnosed Plaintiff with "Major Depressive Disorder,
16  Single Episode, Severe, Without Psychotic Features, an Anxiety Disorder,
17  Not Otherwise Specified, and a Mood Disorder Due to Fibromyalgia."  (AR
18  315).  Dr. Martin noted that Plaintiff's low self-esteem has caused
19  "severe psychomotor retardation on a daily basis."  (Id.).  Dr. Martin
20  rated Plaintiff's current Global Assessment of Functioning ("GAF") at 47
21  and her highest GAF in the past year as a 52.  (AR 321).  Dr. Martin
22  stated that Plaintiff had a fair ability to understand, remember and
23  carry out simple instructions.  (AR 322).  Her ability to follow complex
24  instructions was poor, as was her ability to maintain concentration,
25  maintain a regular schedule, respond appropriately to workplace changes
26  or complete a normal workday without interruptions from psychologically-
27  based symptoms.  (Id.).  Dr. Martin assessed Plaintiff as having extreme
28  functional limitations on her activities of daily living, difficulties

5

in maintaining social functioning, and deficiencies of concentration, persistence or pace.  (Id.).

On June 6, 2009, a psychiatrist working for MetLife Insurance Company stated that Plaintiff "is unable to engage in stress situations and engage in interpersonal relations."[1]  (AR 255-56).

Dr. Alan Karbelnig conducted a comprehensive psychological evaluation of Plaintiff on August 11, 12, and September 3, 2009.  (AR 291).  Dr. Karbelnig diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe with Psychotic Features and Mental Disorder Affecting Musculoskeletal Pain and Fatigue.  (AR 305).  He rated Plaintiff's highest GAF within the past year as 45, which was also her current GAF. (Id.).  Dr. Karbelnig cautioned that, because his interpretations are computer-generated predictions based on response patterns, "the reader should examine the test interpretations for general trends and put limited confidence in any one specific statement."  (AR 299-300).  Dr. Karbelnig found Plaintiff's extreme answers to demonstrate Plaintiff's intense distress, not a lack of credibility.  (AR 300).

B.   **Consultative Examinations**

On April 29, 2008, Plaintiff saw Dr. Sean To for a consulting examination.  (AR 245).  Dr. To is board-eligible in internal medicine, but he is not board-certified.  (Id.).  Dr. To did not review any of Plaintiff's medical records.  (AR 244).  Dr. To diagnosed Plaintiff with

---

[1]  This doctor's name is illegible.  (AR 256).

fibromyalgia/CFS, noting that she "does have tenderness in the pressure point of the shoulders and knees, however, the condition appears to be mild." (AR 244). He found Plaintiff reliable and noted her complaints of constant pain, which worsened with strenuous activities. (AR 241). Regarding Plaintiff's back and neck, he found no evidence of abnormal spinal curvature and noted that "[p]alpation along the paravertebral muscles and midline along the spinous process did elicit mild tenderness in the C-spine and lumbar spine." (AR 243). Dr. To found that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; could walk six hours a day without assistive devices; and had no limitations regarding sitting, activities regarding agility, fine or gross manipulation with her hands, postural limitations or environmental limitations. (AR 244-45).

On May 8, 2008, Plaintiff saw Dr. Rosa Colonna for a psychological evaluation. (AR 246, 250). Dr. Colonna did not review Plaintiff's medical records. (AR 247). Dr. Colonna described Plaintiff's mood as "euthmymic." (AR 248). Dr. Colonna rated Plaintiff's GAF at 70 and opined that Plaintiff "does not present with any mood or affective disturbance." (AR 249-50). Dr. Colonna observed that Plaintiff's memory, attention and concentration span were slightly diminished. (AR 248). Dr. Colonna found no evidence of malingering. (Id.).

**C.   Non-Consultative Examinations**

On May 22, 2008, Dr. Joseph Hartman reviewed Plaintiff's medical records regarding physical impairments. (AR 181-87). Dr. Hartman summarized Plaintiff's medical records up to that point, (AR 186-87),

7

1   and, without citing any evidence or reasoning, reached the same

2   conclusions as Dr. To.  (AR 181-185).  Dr. Hartman found Plaintiff

3   "partially credible."  (AR 187).  He also noted that there were no

4   inconsistencies between any report and Plaintiff's allegations.  (AR

5   187).

6

7       On May 28, 2008, Dr. Vinod Sodha reviewed Plaintiff's mental health

8   records.  (AR 189-99).  He reached the same conclusions as Dr. Colonna

9   and found Plaintiff not severely impaired.  (AR 189, 199).  He did not

10  explain how or why the evidence supported his conclusions.  (AR 180-99).

11

12  **D.   <u>Plaintiff's Testimony</u>**

13

14      On January 19, 2010, Plaintiff testified that she was fifty-six

15  years old; she received a Masters degree in business management and

16  human resources; she last worked as an office manager for Caltech; that

17  job involved sitting, standing and lifting ten pounds frequently and

18  twenty pounds occasionally; prior to that job she had been an

19  administrative assistant since 1990, which also involved standing,

20  sitting and lifting; she stopped working in 2007 because she began

21  feeling flu symptoms, vertigo, extreme tiredness, achiness and pain; her

22  symptoms continued after she stopped working.  (AR 15-21).  Her days

23  consist of letting her dogs out in the backyard, feeding her dogs,

24  taking her medicine, sleeping, reading, watching television, doing small

25  errands and napping.  (AR 21).  She described having difficulty in

26  staying awake and said, "[i]f I feel much better, then I try and go like

27  to the grocery store or, you know, go pick up my prescriptions or do

28  small errands to get out because I try really hard to get out if I can."

(Id.).   If she stays up, she then has to nap, which usually lasts between two and four hours.  (AR 22).  She also described pain related to fibromyalgia and pinched nerves in her low back.  (Id.).

Regarding her mental impairment, Plaintiff testified that she was still seeing Dr. Martin.  (AR 24).  She said,

> I used to be this gigantic multi-tasker and now it is like, if
> I can do one or two things in a day, I feel like 'hey, that's
> a good day!' I think it is a matter of not being able to just
> tell myself, 'okay, you have got to get up and get with it.'
> It just doesn't work anymore, but I am trying still.

(Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate  a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

10

1    The claimant has the burden of proof at steps one through four, and

2 the Commissioner has the burden of proof at step five.  Bustamante, 262

3 F.3d at 953-54.  If, at step four, the claimant meets his burden of

4 establishing an inability to perform past work, the Commissioner must

5 show that the claimant can perform some other work that exists in

6 "significant numbers" in the national economy, taking into account the

7 claimant's residual functional capacity ("RFC"),[3] age, education, and

8 work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at

9 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may

10 do so by the testimony of a vocational expert or by reference to the

11 Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart

12 P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240

13 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional

14 (strength-related) and nonexertional limitations, the Grids are

15 inapplicable and the ALJ must take the testimony of a vocational expert.

16 Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

17

18    Under 42 U.S.C. § 405(g), a district court may review the

19 Commissioner's decision to deny benefits.  The court may set aside the

20 Commissioner's decision when the ALJ's findings are based on legal error

21 or are not supported by substantial evidence in the record as a whole.

22 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.

23 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

24

25

26

27    [3] Residual functional capacity is "what [one] can still do despite
[his] limitations" and represents an "assessment based upon all of the
28 relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

1    "Substantial evidence is more than a scintilla, but less than a
2    preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence
3    which a reasonable person might accept as adequate to support a
4    conclusion." Id. To determine whether substantial evidence supports a
5    finding, the court must "'consider the record as a whole, weighing both
6    evidence that supports and evidence that detracts from the
7    [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny
8    v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can
9    reasonably support either affirming or reversing that conclusion, the
10   court may not substitute its judgment for that of the Commissioner.
11   Reddick, 157 F.3d at 720-21.

12

13                                   **V.**

14                         **THE ALJ'S DECISION**

15

16       The ALJ employed the five-step sequential evaluation process and
17   concluded that Plaintiff was not disabled within the meaning of the
18   Social Security Act. (AR 31-39). At the first step, the ALJ found that
19   Plaintiff has not engaged in substantial gainful activity since her
20   onset date. (AR 33).

21

22       At step two, the ALJ found that Plaintiff had the following severe
23   impairments: massive obesity, mild fibromyalgia/CFS with tenderness in
24   the pressure points of the shoulders and knees, degenerative change of
25   the lumbar spine, mild degenerative change of the hands and feet,
26   chronic neck and low back pain and hypothyroidism. (AR 33). The ALJ
27   found that Plaintiff did not have a severe mental impairment and adopted
28   Dr. Sodha's conclusions regarding Plaintiff's mental limitations. (AR

                                     12

1   35).  The ALJ reasoned that Plaintiff's activities, such as taking care

2   of pets and running errands, rendered the opinions of Drs. Martin and

3   Karbelnig inconsistent with the record.  (AR 34-35).

4

5        At step three, the ALJ found that Plaintiff's physical impairments

6   did not meet or medically equal one of the listed impairments in 20

7   C.F.R. Part 404, Subpart P, Appendix 1.  (AR 35).

8

9        At step four, the ALJ found that Plaintiff had the RFC to perform

10  the full range of medium work as defined in 20 C.F.R. 404.1567(c).

11  (Id.).  The ALJ adopted Dr. To's opinion regarding Plaintiff's physical

12  limitations.  (AR 38).  The ALJ reasoned that it was based on a careful

13  examination of Plaintiff and her documentation, and it was consistent

14  with the objective evidence and Dr. Hartman's assessment.  (Id.).  The

15  ALJ found that Plaintiff was not credible because her "household

16  activities of daily living and her extensive pet care are not consistent

17  with allegations of debility."  (Id.).  The ALJ declined to give

18  significant weight to Dr. Zhao because his assessments were not

19  "consistent with the fairly normal and robust activities of daily living

20  described by Dr. Martin."  (Id.).  The ALJ did not make a finding as to

21  the credibility of Drs. Al-Wardi or Hollcraft, though the ALJ did say,

22  "Dr. Hollcraft stated that all of her laboratory results were completely

23  normal.  Her X-rays showed minimal objective findings," and "Dr. Al-

24  Wardi noted that the claimant's excessive sleepiness was related to

25  depression."  (Id.).  The ALJ also said, "Dr. Hollcraft noted

26  improvement in [Plaintiff's] diffuse aching stiffness and profound

27  tiredness with symptoms suggestive of sleep deprivation and sleeping

28  frequently during the day."  (Id.).

13

Consequently, the ALJ found that Plaintiff could perform her past relevant work.  (AR 39).  The ALJ did not call a Medical Expert or a Vocational Expert.  (AR 33-39).  The ALJ concluded that Plaintiff was not disabled.  (AR 31).

## VI.

## DISCUSSION

Plaintiff contends that the ALJ erred for three reasons. First, Plaintiff argues that the ALJ erred in his analysis of the medical evidence by misunderstanding the nature of fibromyalgia.  (Mem. Supp. Compl. at 8-10).  Second, Plaintiff argues that the ALJ erred by not identifying specific, legitimate reasons for rejecting the treating physicians' opinions. (Id. at 10-13).  Third, Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-7p and 20 C.F.R. section 404.1529 in evaluating Plaintiff's credibility and subjective complaints.  (Id. at 14-17).  For the reasons discussed below, the Court agrees that remand is required.

**A.  The ALJ Erred By Finding That Plaintiff's Mental Impairment Was Non-Severe At Step Two**

Plaintiff argues that "a fair reading of the evidence of record reveals an individual who is severely limited." (Mem. Supp. Compl. at 17).  Specifically, Plaintiff points out that the ALJ accepted Dr. Al-Wardi's finding that Plaintiff's sleepiness was related to depression but considered neither fatigue nor depression as functional limitations. (Id. at 16).  Plaintiff also argues that "[r]ather than engaging in the

14

1   two-step analysis of Plaintiff's pain and subjective complaints, as
2   required by law, the ALJ merely made conclusory statements." (Id. at
3   15).  The Court agrees.

4

5        By its own terms, the evaluation at step two is a de minimis test
6   intended to weed out the most minor of impairments.  See Bowen v.
7   Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119
8   (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)
9   (quoting Smolen, 80 F.3d at 1290) (stating that the step two inquiry is
10  a de minimis screening device to dispose of groundless claims).

11

12       A GAF score is the clinician's judgment of the individual's overall
13  level of functioning.  It is rated with respect only to psychological,
14  social, and occupational functioning, without regard to impairments in
15  functioning due to physical or environmental limitations.  See American
16  Psychiatric Association, Diagnostic and Statistical Manual of Mental
17  Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV"). A rating of 41-50 on
18  the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation,
19  severe obsessional rituals, frequent shoplifting) OR any serious
20  impairment in social, occupational, or school functioning (e.g., no
21  friends, unable to keep a job)." See DSM IV, at 34.  A rating of 61-70
22  on the GAF scale indicates "[s]ome mild symptoms (e.g., depressed mood
23  and mild insomnia) OR some difficulty in social, occupational, or school
24  functioning (e.g., occasional truancy, or theft within the household),
25  but generally functioning pretty well, has some meaningful interpersonal
26  relationships)." See DSM IV, at 34.  While the GAF score itself cannot
27  determine the ultimate question of disability, the GAF score should not
28  be entirely ignored, either.

15

Here, the ALJ applied more than a _de minimis_ test at step two when determining that Plaintiff's mental health impairments were not severe. (AR 34).  Moreover, the ALJ failed to follow the Secretary's regulations governing the evaluation of mental impairments, as described below.

Dr. Trudy and Dr. Karbelnig both diagnosed Plaintiff as depressed. (AR 305, 321).  They assessed Plaintiff's GAF at 45 and 47, both of which indicate a severe impairment.  (_Id._).  Moreover, Dr. Al-Wardi, who the ALJ did credit, found that Plaintiff was depressed.  (AR 38, 203).

These objective medical findings indicate that Plaintiff suffered from a severe mental health impairment.  _See_ 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim).  It appears that the ALJ applied more than a _de minimis_ test and his conclusion at step two that Plaintiff does not suffer from a severe mental impairment was error.  _See_ 20 C.F.R. § 416.920a(b)(1).

In sum, the ALJ failed to properly assess Plaintiff's severe impairments at step two of the evaluation process.  On remand, the ALJ must reconsider Plaintiff's RFC after finding that Plaintiff's mental impairment is severe and must apply the Secretary's applicable regulations after a determination of a severe mental impairment.

**B.   The ALJ Erred By Finding That Plaintiff Could Perform Her Past Relevant Work At Step Four**

   **1.   The ALJ Failed To Properly Consider The Evidence Of Fibromyalgia**

   Plaintiff contends that the ALJ improperly interpreted evidence because he misunderstood fibromyalgia/CFS.  (Mem. Supp. Compl. at 8). Specifically, Plaintiff argues that there are currently no laboratory findings capable of showing fibromyalgia/CFS, and so it was error to require on objective medical evidence.  (Id.).  The Court agrees.

   The Ninth Circuit has recognized that objective symptoms "do not establish the presence or absence of fibromyalgia." Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004) (overruled on other grounds in Abatie v. Alta Health & Life Insurance, 458 F.3d 955, 970 (2006)).  As stated in Jordan: "[F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia."  Id. Instead, a fibromyalgia diagnosis can only be confirmed by a specific test where a patient reports pain in five parts of the body and when at least eleven of eighteen points cause pain when palpated by an examiner's thumb. Id.

   Furthermore, activities that are sporadic or punctuated with rest may be consistent with fibromyalgia/CFS because "disability claimants should not be penalized for attempting to lead normal lives." Reddick,

17

1   157 F.3d at 722.  The Ninth Circuit has held that "the mere fact that
2   a plaintiff has carried on certain daily activities, such as grocery
3   shopping, driving a car or limited walking for exercise, does not in any
4   way detract from," or make a plaintiff's daily activities inconsistent
5   with, fibromyalgia/CFS.  Vertigan v. Halter, 260 F. 3d 1044, 1050 (9th
6   Cir. 2001).  Activities such as walking and swimming may be consistent
7   with the record if they are done for therapeutic reasons.  Id.

9       In this case, the ALJ discredited both Plaintiff and her treating
10  physicians  for  inconsistency  with  the  record.   (AR  34,  38).
11  Specifically, the ALJ found that Plaintiff's "robust activities," (AR
12  38), were inconsistent with fibromyalgia because she

14          drives, takes care of her animals, takes care of personal
15          hygiene, handles money, takes walks, reads her mystery books
16          and fiction novels, gets "take out" food, does Sudoku puzzles,
17          reads a mystery or inspirational book, watches television,
18          uses her computer, runs some errands such as grocery shopping
19          or picking up medications from the pharmacy, attends all
20          scheduled appointments for her physicians, takes care of her
21          pets, and sometimes calls family members.

23  (AR 34-35).  In light of the totality of the medical evidence, the
24  activities above are not grounds to reject Plaintiff's treating doctors'
25  opinions or Plaintiff's own testimony.  These activities are consistent
26  with suffering from fibromyalgia because they were quite sporadic and
27  punctuated with rest.  Reddick, 157 F.3d at 722.  Plaintiff's walking

and swimming do not indicate a lack of credibility because they were ordered by a doctor. Vertigan, 260 F.3d at 1050.

In addition, because negative medical tests are consistent with fibromyalgia, the ALJ erred by requiring objective medical findings to support the evidence. Jordan, 370 F.3d at 872; (AR 35, 38). Therefore, remand is required.

2.     **The ALJ Erred By Failing To Provide Specific, Legitimate Reasons For Rejecting Plaintiff's Treating Physicians' Opinions**

Plaintiff contends that the ALJ erred by failing to provide specific, legitimate reasons for rejecting the treating physicians' opinions. (Mem. Supp. Compl. at 10-13). The Court agrees.

Even if a treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Specialists are accorded more weight than non-specialists. 20 C.F.R. § 404.1527(c)(5). 20 C.F.R. § 404.1527(c)(3) also provides, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."

19

1  Familiarity with the plaintiff's record is another factor.  20 C.F.R. §
2  404.1527(c)(6).  Additionally, selectively focusing on aspects of the
3  treating doctor's report that tend to suggest non-disability will not
4  suffice.  See Edlund, 253 F.3d at 1159.

5

6      Here, the ALJ rejected the assessments of Drs. Karbelnig and
7  Martin, Plaintiff's treating physicians for her mental health, in favor
8  of consulting physicians Dr. Colonna, who examined Plaintiff, and Dr.
9  Sodha, who did not.  (AR 34).  Likewise for Plaintiff's fibromyalgia,
10 the ALJ rejected the opinion of treating physician Dr. Zhao in favor of
11 those of examining physician Dr. To and non-examining physician Dr.
12 Hartman.  (AR 38).  The ALJ reasoned that the treating physician's
13 opinions were "not consistent with the objective evidence." (AR 34-35,
14 38).

15

16     The ALJ accepted the findings of treating rheumatologist Dr.
17 Hollcraft.  (AR 38).  The ALJ's comments were limited to (i) "Dr.
18 Hollcraft stated that all of her laboratory results were completely
19 normal" and (ii) "Dr. Hollcraft noted improvement. . . . This seemed to
20 be related to the fact that she was now exercising, both swimming in a
21 heated pool and power walking for 30 minutes pretty much every day."
22 (Id.).  The ALJ did not note Dr. Hollcraft's finding that "[o]n careful
23 evaluation the patient truly has 18 out of a possible 18 fibromyalgia
24 trigger points."  (AR 221).

25

26     The ALJ's only stated reason for rejecting the treating physicians
27 testimony was that they were inconsistent with the record.  (AR 38).
28 However, as discussed above, the ALJ's conclusion in this regard is

1   undermined by the totality of the record.  <u>Reddick</u>, 157 F.3d at 722.

2   Thus, the ALJ erred in rejecting Dr. Zhao's opinion in favor of Dr.

3   To's.  (<u>Id.</u>).  Whereas Dr. Zhao is board-certified, Dr. To is merely

4   board-eligible.  (AR 245, 289); <u>see also</u> 20 C.F.R. § 404.1527(c)(5)

5   (giving more weight to experts).  Dr. Zhao's specialties, pain medicine

6   and neurology, are more relevant than Dr. To's specialty, internal

7   medicine.  <u>Id.</u>  Dr. To's recommendations demonstrate that he did not

8   take into account Plaintiff's fibromyalgia or her subjective complaints

9   because he concluded that Plaintiff "can lift 50 pounds occasionally and

10  25 pounds frequently," walk up to six hours a day and have no

11  restrictions on sitting or activities requiring agility at all.  (AR

12  244-45).  Dr. To found did not review Plaintiff's medical records.  (AR

13  244); <u>see also</u> 20 C.F.R. § 404.1527(c)(6) ("[T]he extent to which an

14  acceptable medical source is familiar with the other information in your

15  case record" is a relevant factor.).  Additionally, Dr. To examined

16  Plaintiff more than six months before Dr. Zhao diagnosed her.  (AR 243,

17  290). It is unclear whether the tests Dr. To conducted were specific

18  enough to address the causes of Plaintiff's back pain, especially given

19  that Dr. To did find tenderness in Plaintiff's back.  (<u>Id.</u>).  Dr.

20  Hartman merely reiterated Dr. To's findings, providing no evidence for

21  his conclusions.  (AR 182); <u>see also</u> 20 C.F.R. § 404.1527(c)(3) (giving

22  more weight to well-supported opinions).

23

24      The ALJ also improperly rejected treating Drs. Martin and Karbelnig

25  in favor of consulting Drs. Colonna and Sodha.  (AR 34-35).  Whereas Dr.

26  Colonna met with Plaintiff once, Dr. Martin saw Plaintiff regularly for

27  seven months.  (AR 246, 322).  Dr. Sodha is not entitled to greater

28  weight because he concluded that Plaintiff had no impairment based only

21

on Dr. Colonna's opinion and the same daily activities the ALJ improperly relied on, as discussed above. (AR 199). He did not include any further evidence or reasoning. (Id.); see also 20 C.F.R. § 404.1527(c)(3) (giving more weight to well-supported opinions). Additionally, Dr. Colonna saw Plaintiff almost a year before Dr. Martin diagnosed her with depression. (AR 246, 322).

The ALJ selectively reviewed Dr. Hollcraft's opinion, citing Dr. Hollcraft's findings of normal laboratory results and Plaintiff's improvement. (AR 38). Plaintiff's normal laboratory results and exercise are consistent with fibromyalgia, as discussed above. Jordan, 370 F.3d at 872; Reddick, 157 F.3d at 722. These were not legitimate reasons to reject Plaintiff's treating physicians' opinions. Remand is required.

### 3.   The ALJ Erred By Rejecting Plaintiff's Testimony Without Providing Clear And Convincing Reasons

Plaintiff argues that the ALJ erred by not providing specific, clear and convincing reasons for discrediting Plaintiff's testimony. (AR 14-17). Plaintiff argues that it was error for the ALJ to reject Plaintiff's subjective complaints based on a lack of objective medical evidence to corroborate the severity of pain without engaging in a credibility analysis. (AR 14). The Court agrees.

Whenever an ALJ's disbelief of a plaintiff's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d

1229, 1231 (9th Cir. 1990).  Once a plaintiff demonstrates a medical condition, the ALJ may not require that all the symptoms be corroborated by objective medical evidence.  Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).  Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing."  Lester, 81 F.3d at 834.

Here, the ALJ's only reason for rejecting Plaintiff's testimony was that her daily activities and medical history were purportedly inconsistent with the record.  (AR 38).  As discussed above, negative medical tests do not refute a finding of fibromyalgia, nor do Plaintiff's sporadic daily activities.  Jordan, 370 F.3d at 872; Reddick, 157 F.3d at 722.  Moreover, the ALJ found that Plaintiff's "credibility is poor," but neither the ALJ nor any doctor found any evidence that Plaintiff was malingering. (AR 33-39, 181-85, 189-99, 241, 248, 300).  Therefore, neither medical tests nor Plaintiff's daily activities provided the ALJ a clear and convincing reasons for rejecting Plaintiff's testimony.

**4.   Because The ALJ Failed To Properly Evaluate Plaintiff's Severe Impairments, The ALJ Erred In His Assessment Of Plaintiff's RFC And In His Conclusion That Plaintiff Could Return To Her Past Relevant Work**

The ALJ's failure to consider all of Plaintiff's impairments caused him to give Plaintiff an improper RFC.  (AR 35, 39).  As there was substantial evidence in the record of Plaintiff's significant

23

exertional and non-exertional impairments, it was error to conclude that she could return to her past relevant work.

A claimant's RFC reflects an assessment of what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). SSR 96-8p provides in relevant part: "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (SSA July 2, 1996). At Step 5, "[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. at *2 (footnote omitted).

In evaluating RFC, the ALJ must "consider subjective symptoms such as fatigue and pain." Smolen, 80 F.3d at 1291 (citing SSR 88-13 and 20 C.F.R. § 404.1529(d)). SSR 96-8p defines a claimant's RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." The term "regular and continuing basis" is further defined as meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." Smolen, 80 F.3d at 1288. "In determining residual functional capacity, the ALJ must consider subjective symptoms such as fatigue and pain." Smolen, 80 F.3d at 1291 (citing SSR 88-13 and 20 C.F.R. § 404.1529(d)).

Here, the ALJ determined that Plaintiff retained the RFC to perform medium work.[4] (AR 35). Medium work is defined as "lifting no more than

---

[4] Defendant contends that Plaintiff attempted to go back to work and "[a]lthough the school did not allow Plaintiff to return to her old

24

50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

Based upon the undisputed medical evidence, the Court concludes that the ALJ erred in concluding that Plaintiff could perform medium work without limitation. Such a determination was not supported by the record. The ALJ did not include <u>any</u> restrictions based upon back pain, neck pain, fatigue or mental impairment. (AR 35). This was error. As the ALJ noted, Dr. To diagnosed Plaintiff with fibromyalgia/CFS, and Dr. Al-Wardi diagnosed Plaintiff as depressed. (AR 37-38).

Remand is appropriate where additional proceedings could remedy defects in the Commissioner's decision. <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ improperly evaluated the evidence of mental-health impairment and fibromyalgia along with improperly discounting the credibility of both the Plaintiff and her treating physicians, the case must be remanded.

\\
\\
\\
\\
\\
\\

employment because her 'job no longer existed,' the fact that she felt well enough to return to her old job" demonstrates that she could resume work. (Mem. Supp. Answer at 4). However, she was only testing to see if she would be able to work by "[returning] to work part time for a month to see if she was well enough to go back full time." (AR 318).

1  \\
2  \\
3              **VII.**

4           **CONCLUSION**

5

6      Consistent with the foregoing, IT IS ORDERED that judgment be

7  entered REVERSING the decision of the Commissioner and REMANDING this

8  matter for further proceedings consistent with this decision. IT IS

9  FURTHER ORDERED that the Clerk of the Court serve copies of this Order

10  and the Judgment on counsel for both parties.

11

12  DATED: August 31, 2012.

13                                    /S/
                         _____
14                       SUZANNE H. SEGAL
                         UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28